# United States Court of Appeals
## For the First Circuit

No. 10-1322

ROBERT McNAMARA,

Plaintiff, Appellant,

v.

CITY OF NASHUA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Selya and Stahl,

Circuit Judges.

Jennifer A. O'Brien with whom Ronald M. Davids and Davids & Cohen, P.C. were on brief for appellant.
Beth A. Deragon with whom Charles P. Bauer and Gallagher, Callahan & Gartrell, P.C. were on brief for appellee.

January 13, 2011

**BOUDIN**, **Circuit Judge**.  This is an appeal by Robert McNamara seeking review of a decision that granted summary judgment dismissing as time-barred his complaint against the City of Nashua, New Hampshire ("the City")--a complaint based on what he claims to be inadequate pension payments.  The story began a decade ago with McNamara's suspension without pay from the City's Fire Department on August 25, 2000, following an investigation into charges of sexual harassment.  After a hearing, McNamara was discharged on October 18, 2000; he subsequently filed a grievance over that discharge which he settled with the City on March 29, 2001.

The stipulated settlement pertinently provided that the harassment allegations would be purged from McNamara's file but he could not reenter any fire station without prior approval; that he would be allowed to resign as of February 4, 2001; and that he would "be made whole, up and [sic] to and including February 4, 2001," but that any claims for overtime pay since June 2000 were waived.  The City and the Board of Fire Commissioners also agreed to "coordinate . . . activities with Mr. McNamara in order to preserve his rights with the New Hampshire Retirement System and any other benefit he is entitled to under contract, law or by any other source."

McNamara claims that, at the time he signed the stipulation, he was told that his "pension would be maintained whole" by signing and that he "would remain 'in service' for the purpose of [his] pension and  . . . would continue to receive pay

-2-

until [his] pension began." He also claims that city officials threatened that he would lose his pension entirely if he did not sign the agreement and that he was without his normal counsel at the time of the signing.

After McNamara signed the settlement agreement, the City tendered McNamara its general release and offered a check for the amount of salary it calculated that was owed for the period through his new resignation date. Without disputing the amount, McNamara executed the release on May 10, 2001. By the terms of the release McNamara

> discharge[d] [the City] . . . of and from any and all causes of action . . . including but not limited to, any and all claims for . . . medical bills, wages, sick day or vacation compensation and any and all other damages and expenses whatsoever, past, present and future . . . upon or by reason of any matter, cause or thing whatsoever arising from or related to his suspension from [the Nashua Fire Department].

In August 2001, McNamara began receiving pension payments not from the City but from the New Hampshire Retirement System ("NHRS").[1]

In November 2001, at McNamara's request, the City amended the agreement to assist McNamara in obtaining supplemental medical benefits from NHRS by specifying that his effective date of

---

[1]NHRS is the vehicle through which pensions are funded, managed and paid for employees of the state and for policemen, firemen and various teachers. See N.H. Rev. Stat. Ann. § 100-A:1 et seq. (2001). The City pays regular assessments to NHRS to cover part of the pension obligations for firefighters like McNamara and the state contributes the balance. Id. § 102:10.

retirement would be deemed June 20, 2001, rather than February 4, 2001; but under the amendment this did not vary the amount of pay due to him. Both sides advised NHRS of the amendment.

In March 2006, almost five years after the pension payments began, an attorney for McNamara wrote to NHRS saying that McNamara believed that his pension payments were too low. In a nutshell, McNamara asserts that he was not credited for in-service time between his suspension in August 2000 and the date he received his first pension check in August 2001 and, because his pension is calculated based in part on his three highest-paid years of employment, see N.H. Rev. Stat. Ann. § 102:15, this failure resulted in a reduction in his regular pension payments.

On August 22, 2008, McNamara sued the City in federal district court. The complaint contains four counts: (1) violation of Fourteenth Amendment rights under 42 U.S.C. § 1983 (2006); (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; and (4) fraudulent inducement. The City moved for summary judgment which the district court eventually granted upon finding all of McNamara's claims to be time-barred. This appeal followed.

Getting a grip on McNamara's claims is no easy matter, but the core claim as developed, whether sounding in contract or breach of the covenant of fair dealing, is that the City misreported his period in service to NHRS despite commitments to make him whole

-4-

and to help him secure the pension due to him; and, as a result, his pension payments are smaller than they should be. The section 1983 claim, not seriously developed on appeal, is that McNamara was coerced into the settlement; the fraudulent inducement claim is that when settling he was orally promised his full pension by a City attorney.

Under New Hampshire law, the statute of limitations for both personal tort and contract actions is three years. N.H. Rev. Stat. Ann. § 508:4(I) (2010); Coyle v. Battles, 782 A.2d 902, 905 (N.H. 2001) (three-year period applies to contract claims). The state three-year statute also governs the section 1983 claim, Owens v. Okure, 488 U.S. 235, 250 (1989); Harrington v. City of Nashua, 610 F.3d 24, 28 (1st Cir. 2010); although federal law governs the time of accrual, Wallace v. Kato, 549 U.S. 384, 388 (2007), McNamara makes nothing of this. McNamara's central problem, of course, is that he got his first pension check in August 2001 but did not commence suit until more than seven years later.

Ordinarily, a breach of contract, or of a covenant of good faith and fair dealing, will be apparent when it occurs and the statute of limitations begins to run at that time. However, New Hampshire follows the discovery rule and the time for a claim not apparent on its face begins to run only when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or

omission complained of." N.H. Rev. Stat. Ann. § 508:4(I); see Black Bear Lodge v. Trillium Corp., 620 A.2d 428, 430 (N.H. 1993) (discovery rule applies to contract claims).

When McNamara received his first pension payment in August 2001, he saw the amount being paid and he could easily have investigated and pursued a claim resting on underpayment. Nor was the alleged discrepancy so small as to escape notice: McNamara claims now that his damages exceed $100,000 for roughly nine years of underpayment. New Hampshire courts have been insistent on reasonable diligence, applying the discovery rule only in cases far more favorable to the claimant.[2]

In financial affairs, many citizens take a good deal on faith: not everyone zealously checks his bank statement every month, carefully updates insurance policies to account for new conditions, or scrutinizes the apartment lease to ascertain rights and obligations. But concern about stale claims lies on the other side

---

[2]Compare Singer Asset Fin. Co., LLC v. Wyner, 937 A.2d 303, 313 (N.H. 2007) (plaintiff was apprised of injury when bank purchased right to income from future periodic payments for 29 percent of payments' total value), and Perez v. Pike Indus., Inc., 889 A.2d 27, 30-31 (N.H. 2005) (reasonably diligent plaintiff would have investigated and discovered that the source of his injury was a particular subcontractor), with Kelleher v. Marvin Lumber & Cedar Co., 891 A.2d 477, 487-89 (N.H. 2005) (plaintiff could not discover that rot in window was due to ineffective preservative), Big League Entm't, Inc. v. Brox Indus., Inc., 821 A.2d 1054, 1058 (N.H. 2003) (plaintiff raised a triable issue as to when it should have known that sewage damage was caused by defendants' negligent installation of septic system), and Black Bear, 620 A.2d at 428-30 (plaintiff adequately pleaded reasonable diligence in investigating leaks caused by negligent installment of felt underlayment).

of the balance, see Perez, 889 A.2d at 30, and the discovery rule only protects those who do exercise reasonable diligence. Tellingly, McNamara's brief hardly acknowledges this obligation or explains how it was satisfied.

The discovery rule also applies to McNamara's claims based on due process and fraudulent inducement. Any "coercion" occurred at or before the time that McNamara released the City; and fraudulent inducement in the settlement and release also occurred then. Although the adverse consequences manifested themselves only when McNamara was underpaid, due diligence would have revealed this around August 2001. Once his lawyer examined his NHRS file, McNamara did object; but this was in 2006.

McNamara's more substantial response to the limitations bar, to which his brief is mainly devoted, is that his pension represents an "installment contract"; if so, a claim based on underpayment could arise separately with each alleged pension payment. New Hampshire law agrees that "when an obligation is to be paid in installments the statute of limitations runs only against each installment as it becomes due." Gen. Theraphyiscal, Inc. v. Dupuis, 385 A.2d 227, 228 (N.H. 1978); see 10 A. Corbin, Corbin on Contracts § 951, at 16-17 (interim ed. 2007).

New Hampshire courts may not have a case directly on point; but conceivably if the City had to make periodic payments to McNamara and successively underpaid him, a claim might arise each

-7-

time a payment was made and a suit could be brought within the limitations period on any underpayment. E.g., <u>Berezin</u> v. <u>Regency Sav. Bank</u>, 234 F.3d 68, 70, 73 (1st Cir. 2000) (defendant charged plaintiff improper interest on some monthly payments called for by promissory note). Failure to pay entirely, by contrast, has led to disagreement among courts. <u>Compare</u> <u>Pierce</u> v. <u>Metro. Life Ins. Co.</u>, 307 F. Supp. 2d 325, 328-33 (D.N.H. 2004), <u>with</u> <u>Barney</u> v. <u>City of Lincoln</u>, 13 N.W.2d 870, 871-72 (Neb. 1944).

But all this is beside the point. McNamara is not suing NHRS for individual underpayments; he is suing <u>the City</u> for harm done in inducing the settlement and for whatever misreporting may have accompanied it when the City reported matters to the NHRS. Although neither side has cited a New Hampshire case directly on point, a somewhat analogous claim was persuasively dispatched in a New York case, holding that the installment contract rule

> does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time. . . . [T]he plaintiff's miscalculation claims are a direct result of the defendants' single alleged miscalculation [of pension payments]; as a result, the court does not find plaintiff's monthly checks to be independent and distinct wrongs, but rather mere ill effects of the one-time calculation.

<u>Miele</u> v. <u>Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund</u>, 72 F. Supp. 2d 88, 102 (E.D.N.Y. 1999).

Finally, McNamara's brief asserts, without developing the point, that the City had a "continuing obligation" to McNamara, the

apparent intended inference being that the statute of limitations runs indefinitely. There are few areas in limitations law more confusing than the permutations on the phrase "continuing violation," e.g., Jensen v. Frank, 912 F.2d 517, 522-23 (1st Cir. 1990), although sometimes the concept makes sense as, for example, where a succession of individual acts is revealed as a wrong only when taken as a whole.

However, in this case, any inducement or coercion of McNamara to settle and sign the release occurred at or before he did so; and any misreporting of McNamara's creditable service occurred prior to his first pension payment. General references in the settlement agreement to "making him whole"--apparently referring to salary payments never contested--or "coordinating" to help with his pension hardly establish that any actions by the City after August 2001 constituted a new violation of any obligation owed to McNamara.

Whether the City misreported anything to NHRS is unclear; but, if there was misreporting, it occurred long ago and was discoverable, in the exercise of due diligence, within a reasonable period after August 2001. That the wrong (if any) had consequences that endure to the present does not make the violation a continuing one. Jensen, 912 F.2d at 523; accord Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998).

Affirmed.

-9-