# United States Court of Appeals
## For the First Circuit

No. 13-2065

ALFREDO GUERRA-DELGADO, ET AL.,

Plaintiffs, Appellants,

v.

POPULAR, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Howard, Selya, and Lipez, Circuit Judges.

William Santiago Sastre for appellants.
Oreste R. Ramos, with whom Pietrantoni Mendez & Alvarez LLC
was on brief, for appellees.

December 18, 2014

**LIPEZ, Circuit Judge**. After appellant Alfredo Guerra-Delgado ("Guerra") retired from appellee Banco Popular de Puerto Rico ("BPPR"), BPPR undertook a final calculation of his pension, which yielded monthly payments substantially lower than earlier estimates had suggested. Guerra brought claims seeking the higher amount under § 502(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1), a theory of estoppel, and Puerto Rico contract law. The district court dismissed the ERISA and contract claims, holding that Guerra could not be awarded relief under the terms of BPPR's retirement plan and that ERISA preempted the commonwealth law claims. After discovery, the district court granted summary judgment against Guerra on the estoppel claim, holding that estoppel could not apply where the terms of the benefits plan were unambiguous. Agreeing with the district court's conclusions, we affirm.

**I.**

Appellant Guerra was an employee of Banco de Ponce for eight years, from 1980 to 1988.[1] Although Banco de Ponce merged with BPPR in 1990, Banco de Ponce was not affiliated with BPPR during Guerra's tenure there. Guerra resigned from Banco de Ponce in February 1988 to work for First Bank of Puerto Rico, where he remained until he moved to Florida in May 1995 to help his son

---

[1] We recite Guerra's version of the facts in discussing the summary judgment motion. We look only to the allegations in the complaint in discussing the motion to dismiss.

-2-

through difficult times.  Guerra lived in Florida until 1997, and during that period he worked three jobs part-time: as an independent contractor for First Bank of Puerto Rico, as a bus driver for the Osceola school district, and as a driver at Hertz Car Rental.

In late 1996, a former colleague, Angel René Guzmán, recruited Guerra to work for the New York branch of BPPR.  Guerra alleges that BPPR, through Guzmán, agreed as part of its recruiting effort to credit seventeen years of work for other firms toward his pension at BPPR.  In other words, his pension would reflect prior work at two different banks, as well as his other jobs in Florida, beginning with his employment for Banco de Ponce in February 1980. Guzmán denies making such a promise.

Guerra began working for BPPR in New York in April 1997. In January 1999, Guerra and many other BPPR employees in New York became employees of a new entity, Banco Popular North America, Inc. ("BPNA").  Although Guerra retained the same employee ID number, worked in the same office, and performed the same work, he was technically an employee of BPNA from January 1999 until he transferred to a BPPR office in Puerto Rico a year later, in January 2000.

Guerra remained in BPPR's Puerto Rico office until his retirement in 2009.  At the beginning of his tenure there, Guerra asked if the period from 1980 onwards was still being credited

toward his pension. In June 2000, a BPPR Benefits Department representative, Madeline Mundo, sent Guerra a letter on BPPR letterhead, which stated: "Having been an employee of [BPNA] from February 1, 1980, until December 31, 1998, these years of service will be considered as years of credit for purposes of the Banco Popular Pension Plan. From January 1, 1999, until January 2, 2000 [i.e., the period Guerra worked in New York for the new BPNA entity], these years of service will be considered as years of eligibility for purposes of the . . . Plan." Guerra read this letter as confirmation that his employer would continue to honor the alleged 1997 promise. Notwithstanding the contents of the Mundo letter, it is uncontested that Guerra did not, in fact, work for BPNA from February 1, 1980 through December 31, 1998.

Every year from 2003 to 2007, Guerra received an annual "Total Compensation Report" from BPPR. These reports contained estimates of Guerra's pension benefits, calculated on the basis of a 1980 start date. Each report contained a disclaimer that the estimates did not govern the final benefits calculation, and that the official policies of the company's retirement plan would govern.

In 2005, BPPR's benefits structure changed. Employees who had accrued fewer than ten years of benefits had their benefits frozen and received an eleven percent pay raise. Employees who had accrued more than ten years of benefits continued to accrue

-4-

benefits and received a smaller, three percent raise. Even though Guerra did not actually begin working for BPPR until 1997, he received the latter deal because he had, according to BPPR's records, accrued over twenty years of pension benefits by that time.

In 2008, Guerra contacted the BPPR Benefits Department to determine what his benefits would be if he retired early. On September 8, 2008, José Torres of the BPPR Benefits Department sent Guerra an email estimating that he would receive $2,371.99 per month if he retired on February 1, 2009. Guerra subsequently received a written "Estimated Pension Calculation" with the same information. Based on this information, Guerra formally informed BPPR on December 1, 2008 that he would retire in February 2009.

On January 21, 2009, Guerra attended a meeting for retirees. There, a representative from the BPPR Benefits Department suggested to Guerra that he might receive credit for only ten years of service, and that the Torres email and the Estimated Pension Calculation based on the 1980 start date may have grossly overestimated his benefits. Guerra nevertheless retired on February 1, 2009.

During the first week of February, Guerra spoke with someone from the BPPR Benefits Department to try to clarify his benefits entitlement and to make arrangements to return to work in the event the higher figure was not honored. BPPR was supposed to

make a final calculation and then follow up with Guerra. Over a month later, however, Guerra still had not heard from BPPR, nor had he received any pension payment. On March 18, he emailed the Benefits Department to press the issue.

The next day, Guerra received a letter from Torres. The letter explained that he had accrued only seven years of credit, yielding monthly benefits of $570.87, not the $2,371.99 monthly payment he had expected. The seven credited years included: (1) April 29, 1997 through December 31, 1998 (the period Guerra worked for BPPR in New York, up to the time it became BPNA); and (2) January 18, 2000 through December 31, 2005 (the period Guerra worked for BPPR in Puerto Rico, up to the time BPPR discontinued its benefits program for employees who had accrued fewer than ten years of credit). The seven years excluded the one-year period he worked for BPNA in New York and the seventeen years he had worked for other firms. In the same letter, Guerra was offered $18,137.90 in back pay because he had not accrued more than ten years of credit by December 31, 2005, and therefore should have received an eleven percent raise instead of a three percent raise. Guerra requested reconsideration of the estimates, but BPPR confirmed its calculation. Guerra was never reinstated and, according to Guerra, he received no pension payments until after a settlement conference in this action in December 2013. That month, he began receiving monthly payments of $485.

Guerra filed suit in June 2011 against (1) Popular, Inc. (BPPR and BPNA's parent company); (2) BPPR; (3) BPNA; (4) Plan de Retiro de Banco Popular ("the Plan"); and (5) Comité Administrativo de Beneficios de Popular, Inc. ("the Committee"). He advanced claims under ERISA § 502(a), federal common law doctrines of promissory and equitable estoppel, and Puerto Rico contract law. Guerra sought declaratory and injunctive relief, and restitution to redress denial of benefits, breach of contract, and consequential losses.

The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion in part, holding, inter alia, that Guerra had failed to state a claim under ERISA § 502(a)(1) and that ERISA preempted the commonwealth claims.[2] Only the estoppel claim survived. After discovery, the defendants successfully moved for summary judgment on the estoppel claim. The district court held that the unambiguous Plan terms precluded a claim for estoppel. On appeal, Guerra challenges both the dismissal of his ERISA and contract claims and the summary judgment on his estoppel claim.

_____

[2] The district court also dismissed all claims against Popular, Inc. because Guerra had not made any specific allegations that Popular, Inc. had acted as a fiduciary.

-7-

**A. Motion to Dismiss**

We review the order granting a Rule 12(b)(6) motion de novo. Herman v. Meiselman, 541 F.3d 59, 61 (1st Cir. 2008). In our review, we accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the pleader's favor. Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010). The "complaint must contain enough factual material to raise a right to relief above the speculative level . . . and state a facially plausible legal claim." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotation marks omitted).

**1. ERISA § 502(a)(1) Claim**

Guerra's complaint alleges that the defendants are liable "for the benefits due to [him] under the Plan" per ERISA § 502(a)(1)(B). First Am. Compl. ¶ 34 (emphasis added); see 29 U.S.C. § 1132(a)(1)(B) (providing a cause of action to a plan participant or beneficiary to recover benefits due "under the terms of [the] plan"). Guerra does not allege, however, that the plain language of the Plan as adopted requires that he be credited for the years he worked at other firms. Rather, he alleges that those years should be counted because various fiduciaries of the Plan

represented to him that they would be counted.[3]  For Guerra to be entitled to benefits under the terms of the Plan, those representations would have to amount to Plan amendments.

The 1997 promise (in which Guzmán allegedly told Guerra that BPPR would credit seventeen years of employment at other firms toward Guerra's pension) cannot plausibly have amended the Plan because ERISA plans cannot be modified orally.[4]  See 29 U.S.C. § 1102(a)(1) (plans must be "established and maintained pursuant to a written instrument"); Livick v. Gillette Co., 524 F.3d 24, 31 (1st Cir. 2008); Law v. Ernst & Young, 956 F.2d 364, 370 & n.9 (1st Cir. 1992).  Similarly, of the written documents Guerra incorporated into his complaint, none purport to make any change to the Plan, and nearly all of them clearly identify themselves as "estimates" of Guerra's pension benefits.[5]  Since it is not

_____

[3] A number of written representations, along with the Plan, were attached to the complaint as exhibits and were incorporated by reference.  They are therefore properly before us in our review of the motion to dismiss.  See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

[4] Guerra has argued (though he did not allege in his complaint) that a written memorialization of this promise must have existed in his now-missing employment file.  But such speculation cannot successfully lift his claim out of the merely possible into the plausible.  See Ocasio-Hernández, 640 F.3d at 12 (a plaintiff must state a claim that is plausible, not merely possible).

[5] The annual "Total Compensation Reports" and the 2008 "Estimated Pension Calculation" are clearly marked as estimates. An email Guerra received from José Torres of the BPPR Benefits Department did not include an "estimate" disclaimer, but Guerra himself refers to the email as an "estimate."  Guerra also cites a letter from Madeline Mundo of the BPPR Benefits Department, but the

plausible that the Plan was amended by these documents, the relief Guerra seeks does not flow from the terms of the Plan. He consequently cannot recover under § 502(a)(1).

### 2. Commonwealth Claims

In his complaint, Guerra asserts a cause of action for breach of employment contract and denial of retirement benefits under Articles 1044 and 1051 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 2994, 3015. Article 1044 states, "Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." Article 1051 states, in pertinent part, "If the person obliged to do something should not do it, it shall be ordered to be done at his expense."

Guerra argues that the district court erred in dismissing these commonwealth claims as preempted by ERISA. ERISA preempts "any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). "[A] cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action . . . [as well as] where the damages must be calculated using the terms of an ERISA plan." Hampers v. W.R. Grace & Co., 202 F.3d 44, 52 (1st Cir. 2000). A law is

letter does not purport to amend the Plan and operates from the uncontestedly mistaken factual premise that Guerra worked for BPNA from 1980 to 1998.

preempted "even if the law is not specifically designed to affect such plans, or the effect is only indirect." Zipperer v. Raytheon Co., 493 F.3d 50, 53 (1st Cir. 2007) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990)). Where "the very same conduct" underlies both the state law claim and the ERISA claim, that overlap "suggests that the state law claim is an alternative mechanism for obtaining ERISA plan benefits," and the state law claim is preempted. Hampers, 202 F.3d at 52.

Here, Guerra's commonwealth claims are based on the same facts as his ERISA claims. Indeed, his complaint relies on the same allegations for both causes of action. Further, he specifies in the complaint that "[t]he measure of damages is the difference between the benefits correctly owed to [him] and the reduced benefits offered."[6] First Am. Compl. ¶ 57. This calculation, dependent on a calculation of "the benefits correctly owed," demonstrates that the commonwealth claims are merely "an alternative mechanism for obtaining ERISA plan benefits." The district court thus properly held that Guerra's commonwealth claims "relate to" the ERISA-regulated Plan and, accordingly, they are preempted.

_____

[6] Guerra also links the commonwealth claims to a claim for lost social security benefits. He argues that he retired early in reliance on appellees' representations about his pension, and that retiring early caused his social security benefits to be significantly lower than if he had worked to age sixty-five. However, Guerra forfeited this argument by failing to raise it below.

**B. Summary Judgment: ERISA Estoppel**

We review summary judgment orders de novo. <u>Riley</u> v. <u>Metro. Life Ins. Co.</u>, 744 F.3d 241, 244 (1st Cir. 2014). Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>; Fed. R. Civ. P. 56(a). A "material" fact is one that could potentially affect the outcome of the case. <u>Calero-Cerezo</u> v. <u>U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). A "genuine" dispute is one that could be resolved in favor of either party. <u>Id.</u> In other words, summary judgment is inappropriate if a reasonable factfinder could return a verdict for the non-moving party. <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

ERISA § 502(a)(3)(B) authorizes a plan participant, beneficiary, or fiduciary to bring a civil action for "appropriate equitable relief" to redress violations of or enforce any provision of ERISA or the Plan. 29 U.S.C. § 1132(a)(3)(B). Although many of our sister circuits have recognized equitable estoppel claims under § 502(a)(3)(B), <u>see</u> <u>Livick</u>, 524 F.3d at 30-31 (listing cases from the Second, Third, Fifth, Sixth, Ninth, and Eleventh Circuits); <u>Mello</u> v. <u>Sara Lee Corp.</u>, 431 F.3d 440, 444 n.4 (5th Cir. 2005) (listing other cases from those same circuits, plus cases from the Seventh and Eighth Circuits), we have not yet had occasion to do so. In each of the cases raising the issue, we have concluded that, even if such a claim were cognizable, the facts specific to

that case would not support it.  See Livick, 524 F.3d at 31; Mauser v. Raytheon Co. Pension Plan for Salaried Emps., 239 F.3d 51, 57-58 (1st Cir. 2001); City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223, 230 n.9 (1st Cir. 1998); Law, 956 F.2d at 370 n.9; see also Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 99 n.4 (1st Cir. 2007) (noting cases).  We continue that approach here.

An equitable estoppel claim consists of two elements: (1) the first party must make "a definite misrepresentation of fact" with "reason to believe" the second party will rely on it, Law, 956 F.2d at 368 (internal quotation marks omitted); and (2) the second party must reasonably rely on that representation to its detriment, id.; Mauser, 239 F.3d at 57.  We have in the past assumed that any such claim under ERISA is necessarily limited to statements that interpret the plan and cannot extend to statements that would modify the plan.  See Law, 956 F.2d at 369-70 (discussing the notion that estoppel applies to interpretations but not modifications of ERISA plans).

Two reasons support this limitation.  First, because an ERISA plan must be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), a plan cannot be modified orally.  Law, 956 F.2d at 370 n.9.  Therefore, it would be inherently unreasonable to rely on an oral statement purporting to modify the plan.  Second, ERISA plans must "provide a procedure for amending [the] plan," 29 U.S.C. § 1102(b)(3), and modifications

-13-

made in contravention of the plan's stated procedure violate that requirement.  Law, 956 F.2d at 370 n.9.  It would be unreasonable to rely on an informal statement that departed from that procedure. Livick, 524 F.3d at 31.  However, representations that interpret rather than modify the plan may provide "a narrow window for estoppel recovery."  Law, 956 F.2d at 370.  We have observed that "a plan beneficiary might reasonably rely on an informal statement interpreting an ambiguous plan provision; if the provision is clear, however, an informal statement in conflict with it is in effect purporting to modify the plan term, rendering any reliance on it inherently unreasonable."  Livick, 524 F.3d at 31.  We have explained that "[t]his is why courts which do recognize ERISA-estoppel do so only when the plan terms are ambiguous."  Id.

In this case, Guerra argues that ERISA estoppel applies because the terms of the Plan are ambiguous.  Whether the terms of a contract are ambiguous is a question of law, subject to plenary review.  Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995).  We will usually find ambiguity if the "terms are inconsistent on their face" or the language "can support reasonable differences of opinion as to [its] meaning."  Id. (quoting Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989)).  Guerra has identified three alleged ambiguities in the Plan.  We take each in turn.

### 1. Years of Service

Guerra argues that an ambiguity exists in the Plan's definition of Years of Service. Years of Service are defined in § 1.35 of the Plan as the period of employment for BPPR or an affiliated company measured in years and months. In addition, Years of Service include years of active participation or employment with a handful of specified companies during limited periods when those companies were not affiliates of BPPR. Guerra argues that § 1.35 is ambiguous insofar as it leaves open the possibility that there may be other, unspecified exceptions. We rejected such thinking in Riley, when we reaffirmed our commitment to the principle of expressio unius est exclusio alterius. 744 F.3d at 249. "The [expressio unius] maxim instructs that, when parties list specific items in a document, any item not so listed is typically thought to be excluded. . . . While this interpretive maxim is not always dispositive, it carries great weight . . . ." Id. (quoting Smart, 70 F.3d at 179) (alteration and first omission in original). Here, the mere inclusion of specifically articulated exceptions does not render § 1.35 of the Plan ambiguous.

### 2. Years of Credit

Reprising the same argument in a slightly different context, Guerra contends that the definition of Years of Credit is ambiguous because credit may be given for time employed with a closed set of unaffiliated employers. The argument fails here for

the same reason it failed in the preceding discussion on Years of Service.

### 3. The Power to Amend

Finally, Guerra maintains that there is a "clear irreconcilable conflict between section 1.34 [Years of Credit] . . . and section 10.01." Section 10.01 gives BPPR the power to "amend the Plan, retroactively or otherwise, at any time." Guerra insists that the power to amend is at odds with a non-fluid definition of Years of Credit for specified companies that were not affiliated with BPPR. In effect, he argues that because BPPR can change the Plan "at any time," the otherwise clear provisions of the Plan are unstable or, to use a word more useful to his estoppel claim, ambiguous. But the bare power to amend a plan does not upset the clarity of its terms. Otherwise, every term in a plan subject to amendment would be ambiguous. The untenability of that argument is plain.

Since Guerra has not shown any ambiguity in the Plan, his equitable estoppel claim necessarily fails.[7]

---

[7] Guerra also argues that he has vested rights in the Banco de Ponce pension plan and that BPPR became liable for that pension when it acquired Banco de Ponce in 1990. The argument was not raised below until Guerra's post-judgment Rule 60(b) motion. The district court denied the motion and Guerra did not appeal that decision. Consequently, the issue was not preserved for appellate review.

## III.

For the reasons set forth above, Guerra's ERISA § 502(a)(1) claim fails because he cannot recover benefits under the terms of the Plan.  His commonwealth claims are preempted.  His estoppel claim pursuant to ERISA § 502(a)(3) fails because the Plan is unambiguous.  Accordingly, we affirm the district court's judgment.[8]

So ordered.

---

[8] Guerra bears primary responsibility for this outcome because of his decision to retire early in the face of uncertainty about his pension amount.  Moreover, under the applicable law, he unreasonably relied on oral and written representations from BPPR about his pension that contravened the unambiguous terms of the Plan.  Still, as a factual matter, BPPR bears a share of the responsibility for Guerra's present circumstances. BPPR employees provided Guerra with inaccurate written pension estimates for years, even when he affirmatively sought confirmation of his pension amount.  BPPR's legal victory here does not excuse its own problematic performance.