NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2769
_____

SHARON MORNINGRED
*Appellant*
v.

DELTA FAMILY-CARE & SURVIVORSHIP PLAN;
SEDGWICK CLAIMS MANAGEMENT SERVICES INC.
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-10-cv-00272)
District Judge:  Mary Pat Thynge
_____

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2013

Before:  SLOVITER, FUENTES, and ROTH, Circuit Judges

(Filed:  May 28, 2013)
_____

O P I N I O N
_____

SLOVITER, Circuit Judge.

Sharon Morningred ("Morningred") appeals from the District Court's grant of summary judgment against her. She claims that Sedgwick Claims Management Services ("Sedgwick") arbitrarily and capriciously denied her disability benefits under the Delta Family-Care & Survivorship Plan (the "Plan") in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] *See* 29 U.S.C. § 1132 (a)(1)(B). We will affirm.

I.

Morningred worked for Delta Airlines as a baggage service agent, ticket counter agent, lobby agent, and gate agent.[2] Her job required her to handle hundreds of bags and pieces of freight, weighing up to seventy pounds. On May 29, 2008 Morningred slipped and fell while carrying two duffle bags at work. A doctor diagnosed her with injuries to her neck, back, shoulder, arm, knee, and ankle.

---

[1] The District Court had jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of the District Court's grant of summary judgment, and we apply the same standard applicable in the District Court. *See Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 362 (3d Cir. 2008). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

[2] Because this is a motion for summary judgment, we view the facts in this case in the light most favorable to Morningred, the non-moving party. *See Doe*, 527 F.3d at 362.

Morningred's injuries prevented her from returning to work, and she applied for short-term disability under the Plan.[3] Sedgwick approved Morningred's request for short-term disability benefits for the period between May 31, 2008 and June 30, 2008. When her symptoms persisted, Morningred saw a number of other doctors, and was eventually diagnosed with complex regional pain syndrome ("CRPS").[4] Morningred sought to extend her disability benefits based on her diagnosis, but Sedgwick denied the claim. In its denial letter, Sedgwick wrote that there was "no objective medical documentation to support [Morningred's] diagnosis" nor a "consistent treatment plan, other than physical therapy." App. at 682. The letter explained that Morningred had a right to appeal Sedgwick's decision, and it listed the type of medical evidence that Morningred could use to support her claim.

Morningred appealed Sedgwick's decision on October 16, 2008. She wrote that her doctor had only cleared her for work in a sedentary position, but that her manager would not allow her to return to work unless she could return to "normal functions within 60 days." App. at 681. She also requested and received copies of Sedgwick's records relevant to her appeal. As part of her appeal, Morningred submitted new medical records. Sedgwick forwarded Morningred's new medical records and the rest of her file to Insurance Appeal Limited for an independent review by Dr. Robert L. Marks, a board certified physician in physical medicine and rehabilitation and neurology. Marks

---

[3] An employee is eligible for short term disability under the Plan when she is "unable to engage in [her] customary occupation as a result of a demonstrable injury or disease." App. at 123. Sedgwick had exclusive discretionary power to interpret the Plan and make benefit determinations.

[4] CRPS is also known as reflex sympathetic dystrophy syndrome ("RSD").

3

concluded that Morningred should have been able to return to work as of July 1, 2008.

Sedgwick communicated the final denial of benefits to Morningred and her attorney in a letter sent on April 8, 2009.

After receiving the letter, Morningred filed a complaint against Sedgwick and the Plan, alleging that Sedgwick violated ERISA by arbitrarily and capriciously denying her disability benefits. Sedgwick and the Plan moved for summary judgment, and the District Court treated Morningred's response as a cross-motion for summary judgment. *See Morningred v. Delta Family-Care & Survivorship Plan*, 790 F. Supp. 2d 177, 183 (D. Del. 2011). The court granted both motions in part and denied both motions in part.[5] *Id.* at 196-97.

## II.

On appeal, Morningred argues that the District Court erred by determining that Sedgwick's denial of her benefits after July 23, 2008 was not arbitrary and capricious.[6] She argues that Sedgwick's initial denial letter did not meet the standards specified by ERISA and its implementing regulations. Morningred also claims that "procedural

---

[5] The District Court initially held that Morningred had waived her right to challenge procedural defects in Sedgwick's initial denial letter, but it granted Morningred's motion for reargument and allowed her to challenge these procedural defects. *Morningred*, 790 F. Supp. 2d at 191-95. It found, however, that Sedgwick's letter was sufficient. *Id.* It also denied the remainder of Morningred's motion for reargument. *Id.* at 196-97.

[6] Marks' report listed July 1, 2008 as the date on which Morningred should have been able to return to work, but this date appears to be the result of a miscalculation. *See Morningred*, 790 F. Supp. 2d at 189 n.60. The District Court granted summary judgment in favor of Morningred for benefits from July 1, 2008 to July 23, 2008, and the denial of her benefits until July 23 is not at issue in this appeal. *Id.* at 190.

4

irregularities" and other problems in Sedgwick's review of her records demonstrate that its denial of benefits was arbitrary and capricious. Appellant's Br. at 39-41.

## A. Sufficiency of Denial Letter

ERISA plan administrators must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1).[7] A denial letter must, *inter alia*, provide a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(iii). These regulations ensure that claimants have the ability to "understand" and "challenge" an administrator's decision. *Miller v. American Airlines, Inc.*, 632 F.3d 837, 852 (3d Cir. 2011). "[N]oncompliance" with ERISA's notice requirements "weighs in favor of finding that decision was arbitrary and capricious." *Id.* at 852-53.

Sedgwick's letter meets ERISA standards. It clearly explains that Morningred's claim failed because she had not provided "objective medical documentation" or a "consistent treatment plan, other than physical therapy." App. at 682. Moreover, the

---

[7] Appellees contend that Morningred waived her argument that Sedgwick's initial denial letter was inadequate because she did not raise this argument during the administrative appeal process. *See Harlow v. Prudential Ins. Co. of Am.* 279 F.3d 244, 249 (3d Cir. 2002) (holding that plaintiffs must exhaust their administrative remedies under ERISA before bringing claims in court). Morningred, however, did raise the alleged inadequacy of her initial denial letter with Sedgwick who responded by writing that the letter was "sufficient" and that any insufficiency was "harmless." App. at 19. Although this exchange occurred after the administrative appeals process had ended, it was sufficiently substantive to exhaust Morningred's claims.

letter provides an extensive list of the information that Morningred could use to support her claim for disability including "a detailed narrative report . . . outlining the specific physical and/or mental limitations related to your condition that your doctor has placed on you; . . . diagnostic studies . . . such as test results, X-rays, laboratory data, and clinical findings;" and "[a]ny information specific to the condition(s) for which you are claiming disability that would help us evaluate your disability status." App. at 683. Morningred's understanding of the letter is evidenced by her submission of medical records to Sedgwick for an administrative appeal. Thus, as ERISA requires, the letter ensured that Morningred had the chance to "clarify [her] application on appeal." *See Skretvedt v. E.I. Dupont de Nemours & Co.*, 268 F.3d 167, 177 n.8 (3d Cir. 2001), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).[8]

## B. Sufficiency of Sedgwick's Review

Because Sedgwick has been granted discretionary authority to construe the terms of the Plan, we review its denial of benefits under an arbitrary and capricious standard. *See Nazay v. Miller*, 949 F.2d 1323, 1334 (3d Cir. 1991). Under this standard of review, the fiduciary's decision must be affirmed unless it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845 (internal quotation marks and citation omitted).

---

[8] Morningred argues that Sedgwick's letter fails to meet ERISA's standards because it does not mention her specific diagnosis or provide a list of the precise information needed to succeed in her claim for disability based on a diagnosis of CRPS. ERISA, however, merely requires that an administrator provide enough information for a claimant to "understand" and "challenge" a denial of benefits. *See Miller*, 632 F.3d at 852. Sedgwick's denial letter meets those standards.

Sedgwick's decision was not arbitrary and capricious. Although some of Morningred's doctors concluded that she was disabled by CRPS, other doctors, including some of her own physicians, concluded that Morningred could return to work. Dr. Robert Marks, who reviewed the case for Insurance Appeals Limited, also concluded that Morningred's symptoms could not be explained by the CRPS diagnosis, and that she should be able to return to work. It was within Sedgwick's discretion to weigh the medical evidence and conclude that Morningred was not disabled. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831-34 (2003). The District Court therefore did not err in concluding that Sedgwick's decision to deny Morningred's short term disability request after July 23, 2008 was not arbitrary and capricious.[9]

III.

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[9] Morningred points to several procedural irregularities that she argues suggest that her denial of benefits was arbitrary and capricious. She claims (1) that Sedgwick made its determination too quickly and should have given her a chance to review the report from Insurance Appeals Limited before Sedgwick concluded its administrative appeal; (2) that Sedgwick did not adequately consider the demands of her job; and (3) that Sedgwick's review was not sufficiently individualized to meet the standards of ERISA. None of these claims have merit: (1) ERISA does not require that administrators provide claimants access to medical opinion reports prior to making final decisions on appeal, *see Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007); (2) the record clearly demonstrates that Sedgwick knew and recorded the demands of Morningred's job in its records and took such demands into account in making its benefits determination; (3) Sedgwick provided a sufficiently individualized determination of eligibility by considering hundreds of pages of medical evidence, including the CRPS diagnosis.

7