# United States Court of Appeals
## For the First Circuit

No. 15-1273

DIONISIO SANTANA-DÍAZ,

Plaintiff, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Thompson, Hawkins,* and Barron,
Circuit Judges.

Efrain Maceira-Ortiz for appellant.
Frank Gotay-Barquet for appellee.

March 14, 2016

_____

* Of the Ninth Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.  In this appeal under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461, Appellant Dionisio Santana-Díaz ("Santana-Díaz") challenges the district court's dismissal of his suit as time-barred, arguing that he is entitled to equitable tolling, in part because the plan administrator, Appellee Metropolitan Life Insurance Company ("MetLife"), failed to include the time period for filing suit in its denial of benefits letter. We hold that ERISA requires a plan administrator in its denial of benefits letter to inform a claimant of not only his right to bring a civil action, but also the plan-imposed time limit for doing so. Because MetLife violated this regulatory obligation, the limitations period in this case was rendered inapplicable, and Santana-Díaz's suit was therefore timely filed.  Accordingly, we reverse and remand.

## BACKGROUND

We begin by summarizing the facts relevant to this appeal.  Santana-Díaz was a financial analyst and ten-plus-year employee at Shell Chemical Yabucoa, Inc. ("Shell Chemical").[1]  He participated in Shell Chemical's employee welfare benefit plan (the "Plan"), which Shell Chemical provided through a group

---

[1] According to the complaint, Santana-Díaz actually began his employment with Puerto Rico Sun Oil Company ("SUNOCO") in 1981 as a clerk, but SUNOCO sold its Yabucoa operations to Shell Chemical in 2002.

insurance policy issued by MetLife.  Beginning in November 2007, Santana-Díaz, who suffered from major depression, high blood pressure, asthma, and various other physical and mental ailments, claimed and received sick leave and then short-term disability leave.  Santana-Díaz submitted his claim for long-term disability benefits on April 7, 2008, and in December 2008, received his first long-term disability benefit payment for the period beginning on November 23, 2008.

On April 5, 2010, MetLife sent Santana-Díaz a letter informing him that, although he was currently receiving long-term disability benefits, the maximum duration period for his particular disability was twenty-four months, and his benefits would therefore expire on November 22, 2010.  As MetLife explained it, under the terms of the Plan, long-term disability benefits were limited to twenty-four months if the beneficiary's disability was the result of a "mental or nervous disorder or disease limitation."  "[T]he primary diagnosis preventing [Santana-Díaz] from working [was] major depression," MetLife said, which fell into that category, thus Santana-Díaz was entitled to long-term disability benefits only for the limited duration period.  MetLife went on to explain that in order to continue receiving benefits beyond November 22, 2010, Santana-Díaz would have to submit

additional documentation that showed his disability was not subject to the limitation.[2]

After receiving the April 5, 2010 letter, Santana-Díaz submitted various medical files and additional information. Upon reviewing the documents, MetLife denied Santana-Díaz's claim for an extension of benefits beyond the twenty-four-month limited period in a letter dated November 24, 2010. Santana-Díaz, proceeding pro se, filed an administrative appeal of the decision with the aid of his son, which MetLife likewise denied in an August 19, 2011 letter. Now this is important for our purposes today: both MetLife's November 24, 2010 initial denial of benefits letter and its August 19, 2011 final denial letter informed Santana-Díaz that he could bring a civil action, but neither letter included a time limit for doing so or mentioned at all that the right to bring suit was subject to a limitations period.

Nevertheless, the Plan -- which Santana-Díaz had received when Shell Chemical first became his employer at least ten years prior -- did contain a three-year limitations period that provided, in relevant part, that "[n]o legal action of any kind may be filed . . . more than three years after proof of Disability must be filed." Under the terms of the Plan, the

---

[2] For example, not all disabilities resulting from "mental or nervous disorder or disease" were limited to twenty-four months; the Plan made an exception for schizophrenia, bipolar disorder, dementia, and organic brain disease.

deadline for Santana-Díaz's proof of disability had been February 17, 2009 (and no, MetLife never mentions this start date in its letters either).[3] According to MetLife, Santana-Díaz's time period for filing suit therefore expired three years thereafter.

Alas, Santana-Díaz, finally represented by counsel, did not file suit until August 18, 2013. The complaint alleged a 29 U.S.C. § 1132(a) claim for improper denial of benefits. In a motion for summary judgment, MetLife argued the suit was filed a year-and-a-half too late. The district court agreed, granting the motion and dismissing Santana-Díaz's complaint as time-barred. Santana-Díaz now appeals, arguing that the district court erred in dismissing his case because MetLife's failure to provide notice of the time limit for filing suit in its final denial letter entitled him to equitable tolling.

---

[3] The route by which this February 17, 2009 proof-of-disability deadline is arrived at, while undisputed by the parties, is labyrinthine. Under the Plan, proof of disability is due "within 3 months after the end of [the] Elimination Period," which, in turn, is defined as "360 days of continuous Disability," during which long-term disability benefits are not paid, beginning on the day the beneficiary becomes disabled. Here, the Elimination Period began on November 28, 2007, when Santana-Díaz became disabled, and ended 360 days thereafter. By our calculations, this would have been November 22, 2008, but the parties, without explanation, agree that the Elimination Period ended on November 17, 2008. Accepting the parties' computation, Santana-Díaz's proof of disability was then due three months after that November 17, 2008 date. Hence, February 17, 2009.

**DISCUSSION**

We review the district court's grant of summary judgment de novo. Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 516 (1st Cir. 2005).

ERISA itself does not contain a statute of limitations for bringing a civil action, see 29 U.S.C. § 1132(a)(1)(B), so federal courts usually "borrow the most closely analogous statute of limitations in the forum state." Santaliz-Ríos v. Metro. Life Ins. Co., 693 F.3d 57, 59 (1st Cir. 2012), cert. denied, 133 S. Ct. 1726 (2013). But where the employee benefit plan "itself provides a shorter limitations period, that period will govern as long as it is reasonable." Id. at 60. In this case, the Plan contained a three-year limitations period that ran from the date proof of disability was due. MetLife included no mention of this time limit in its final denial letter. The issue at the heart of this appeal is what impact such defective notice should have on a contractual limitations period. Before we turn to this question, however, we first briefly address Santana-Díaz's argument that the district court applied the wrong start date to the limitations period.[4]

---

[4] MetLife raises a preliminary argument that we should summarily dismiss Santana-Díaz's appeal because his brief does not technically comply with Federal Rule of Appellate Procedure 28(a)(6) in that it does not contain a statement of facts or citations to the record. We are none too pleased that Santana-Díaz's brief, indeed, lacks a separate statement of facts section

- 6 -

## I.    Limitations Period Start Date

Santana-Díaz's argument regarding the limitations period start date is anything but clear. He seems to want us to conclude that the three-year limitations period began to run on August 19, 2011, the date of the final denial letter, and not, as the Plan provides, on the date proof of disability was due.

Santana-Díaz argues that, because he was still receiving benefits on February 17, 2009, when proof of disability was due, he "had nothing to complain about," and had no reason to file suit. Thus, he says, it would be "clearly erroneous, patently unreasonable and will result in an unfair outcome" for the limitations period to have begun to run before he had suffered an actual injury. Santana-Díaz seems to suggest that perhaps the limitations period would, instead, have begun to run on November 24, 2010, when MetLife issued notice terminating his benefits. Except that date did not set off the limitations period either, he argues, because in that November 24, 2010 letter, MetLife stated: "In the event your appeal is denied in whole or in part, you will have the right to bring a civil action . . . ." Santana-Díaz

and record citations, but we will not dismiss the case for these oversights. Although they are intermingled throughout his brief, Santana-Díaz provides an adequate description of the relevant facts, and this case is neither so fact-heavy nor record-intensive that we are unable to locate the relevant facts in the record. We therefore reject MetLife's argument that the appeal should be dismissed on these grounds and proceed to the merits of the appeal.

argues that this instruction to await the outcome of the administrative appeal before bringing a civil action, without any other mention in the letter of a time limit for filing suit, obscured from him the fact that the clock for filing was already ticking, and that, on that basis, we should conclude the limitations period actually only began to run on August 19, 2011, when his administrative appeal was denied. (Three years from either date, November 24, 2010, or August 19, 2011, though, would have rendered Santana-Díaz's August 18, 2013 complaint timely.)

Santana-Díaz never really clarifies in his brief whether he is challenging the enforceability of the limitations provision, raising an estoppel argument, or presenting some combination thereof, and we are not quite persuaded that, under any of these theories, Santana-Díaz would be able to get around the limitations period start date as it is written in the Plan.[5] Regardless, it

---

[5] The Supreme Court has already held enforceable a contractual limitations period that, as in the present case, commenced when proof of disability was due, instead of the date of the final denial letter, explaining that "[a]bsent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 610 (2013). Santana-Díaz does not challenge the reasonableness of either the three-year period on its face or the six months that were left for filing suit once MetLife issued a final decision. Instead, he suggests his case is distinguishable because, unlike the plaintiff in Heimeshoff who was initially denied her claim, he was receiving benefits at the time the limitations period began to run. But Santana-Díaz cites no legal authority that explains why this should make a difference in our analysis, nor do we find his

does not matter because, as we get to in a minute, we conclude MetLife's regulatory violation rendered the contractual limitations period in this case altogether inapplicable, and we therefore do not need to decide when that limitations period would have begun to run.

## II.   MetLife's Regulatory Violation

Santana-Díaz argues here, as he did below, that MetLife's final denial letter did not comply with 29 C.F.R. § 2560.503-1(g)(1)(iv) because it failed to provide notice of the plan-imposed time limit for filing suit, and that, as a result, equitable tolling should apply.[6]  The district court disagreed,

---

argument convincing.  Although the plaintiff in Heimeshoff never received benefits, she was equally unable to file suit until her claim was administratively exhausted.  Yet, the Supreme Court found it fit to hold that the limitations period continued to run during this time, despite the fact that her administrative appeal had not yet been denied and she could not have filed her action until the final denial.  See id. at 612-13.

As to equitable estoppel, that doctrine applies when a defendant makes a "definite misrepresentation," on which it has reason to know the plaintiff will rely, and the plaintiff reasonably relies on it in failing to bring suit.  Ramírez-Carlo v. United States, 496 F.3d 41, 49 (1st Cir. 2007) (quoting Heckler v. Comty. Health Servs., 467 U.S. 51, 59 (1984)).  While MetLife's November 24, 2010 letter may have been confusing, we are not certain that its statements would amount to a "misrepresentation," or that Santana-Díaz reasonably relied on it to late-file his suit.

[6] A limitations period may be equitably tolled where a plaintiff establishes that "extraordinary circumstances" beyond his control prevented a timely filing, such as where the plaintiff was "materially misled into missing the deadline."  Barreto-Barreto v. United States, 551 F.3d 95, 101 (1st Cir. 2008) (citations omitted).

concluding that, even though MetLife had failed to provide notice, this failure did not entitle Santana-Díaz to the "extraordinary measure of equitable tolling" because Santana-Díaz "was made aware of both the time limit for plan participants to file legal action and how the plan calculates time, since these matters were clearly and explicitly laid out in the group policy." We need not determine whether the district court correctly decided this equitable tolling issue, however, because we begin and end our review with the issue of MetLife's failure to note the time period for filing suit in its final denial letter.

As we explain in the following sections, we conclude that, in failing to provide such notice, MetLife was not in substantial compliance with the ERISA regulations, and that this rendered the limitations period altogether inapplicable. Because this resolves the question of whether Santana-Díaz's claim was time-barred, we need not discuss whether the limitations period would otherwise have been equitably tolled.[7]

---

[7] At oral argument, counsel for MetLife argued we could not directly address the argument that it had violated section 2560.503-1(g)(1)(iv) because the only question Santana-Díaz had raised on appeal is whether he would be entitled to equitable tolling as a result of the purported violation. But we are unpersuaded by the suggestion that Santana-Díaz has waived the regulatory violation argument here. To the contrary, Santana-Díaz explicitly argued in his brief, as he did before the district court, that MetLife violated section 2560.503-1(g)(1)(iv) when it failed to include the time period for filing suit in its final denial letter. Specifically, he argued: "First, the final notice served by MetLife did not include the statement of the time frame

## A. Violation of Section 2560.503-1(g)(1)(iv)

ERISA is a remedial statute intended "to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (alterations in original) (quoting 29 U.S.C. § 1001(b)). In furtherance of this purpose, section 503 of ERISA, codified as 29 U.S.C. § 1133, provides that "every employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose

---

plaintiff had to file the civil action as required by ERISA regulations contained [in] 29 CFR 2560.503-1(g)[1](iv);" and, "The other issue has to do with appellee's violation [of] the notice requirement imposed by ERISA. According to ERISA regulations . . . on its final notice MetLife had the legal obligation to notify plaintiff of the time limit to file court action;" and again in his Reply Brief, "Accepting appellee's argument amounts to converting [to] 'dead letter' the notice requirement contained in 29 CFR 560.503-1(g)[1](iv)." Thus, we think the regulatory violation argument was sufficiently briefed. See United States v. Dunbar, 553 F.3d 48, 63 n.4 (1st Cir. 2009) (holding that, although an argument was not stated "artfully," it was not waived where the brief identified the relevant facts and law).

Furthermore, MetLife had and took the opportunity to respond, albeit briefly, to this argument, indicating that it understood Santana-Díaz was challenging its failure to comply with section 2560.503-1(g)(1)(iv). (We note that MetLife, moreover, was the defendant-appellee in Moyer v. Metropolitan Life Insurance Co., 762 F.3d 503 (6th Cir. 2014), a nearly identical case in which, as we discuss later, the Sixth Circuit took a similar approach as the one we take here. MetLife was thus certainly aware of the way other circuits have treated this exact regulatory violation.)

- 11 -

claim for benefits under the plan has been denied" and "afford a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. One of the purposes of section 1133 is to "enable the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." Witt v. Metro. Life Ins. Co., 772 F.3d 1269, 1280 (11th Cir. 2014) (citation omitted); see also Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1086 (8th Cir. 2009); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689 (7th Cir. 1992). As such, the regulations promulgated under section 1133, in relevant part, require a plan administrator to provide "written or electronic notification of any adverse benefit determination" that includes a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action." 29 C.F.R. § 2560.503-1(g)(1)(iv).

The question before us is one of interpretation: the parties differ in their reading of this regulation, specifically, in their interpretation of which "time limits" must be included in the denial letter. Santana-Díaz argues the regulation requires plan administrators to include notice of not only the right to bring a civil action, but also the time limit for filing the action. MetLife disagrees. It suggests we should read the regulation as requiring only those time limits applicable to

- 12 -

internal administrative review procedures. In other words, MetLife seems to argue that the two phrases in section 2560.503-1(g)(1)(iv) could be read separately, such that a plan administrator is, first, required to include in its denial letter a "description of the plan's review procedures and the time limits applicable to such procedures," and second, required to include "a statement of the claimant's right to bring a civil action," though not necessarily the time period for filing the action.

In support of its interpretation of section 2560.503-1(g)(1)(iv), MetLife cites an unpublished case, Wilson v. Standard Insurance Co., 613 F. App'x 841 (11th Cir. 2015) (per curiam), in which the plan administrator similarly failed to include notice of the time limit for filing suit in its final denial letter. But in Wilson the Eleventh Circuit did not decide on an interpretation of section 2560.503-1(g)(1)(iv). Instead, it concluded the language was ambiguous, and speculated the provision could be read two ways: either as including "civil action" as part of the plan's review procedures, such that notice of the time limits for both administrative review procedures and civil actions are required, or as requiring notice of the right to file suit, but not the time limits for doing so. Id. at 844. Rather than deciding on an interpretation, the court assumed, favorably to the plaintiff, that the plan administrator had violated section 2560.503-1(g)(1)(iv), but declined to "simply assume unenforceability" of

- 13 -

the limitations period on the basis of the plan administrator's "failure to interpret the ambiguous regulation that way." Id. It thus resolved the case against the plaintiff on equitable tolling grounds instead, holding that she was not entitled to equitable tolling because she had not been diligent in pursuing her suit, and it thus concluded that the case had been properly dismissed as time-barred. Id. at 844-45.

We decline to follow the Eleventh Circuit's approach here. Based on the plain language of the regulation, we hold that the correct interpretation of section 2560.503-1(g)(1)(iv) is that a denial of benefits letter must include notice of the plan-imposed time limit for filing a civil action. To repeat, the regulation states that the letter must contain a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action." 29 C.F.R. § 2560.503-1(g)(1)(iv) (emphasis added). We previously noted in Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 680 n.7 (1st Cir. 2011), a case in which we discussed but did not decide this issue, that we think "the term 'including' indicates that an ERISA action is considered one of the 'review procedures' and thus notice of the time limit must be provided." We further stated we would not find "compelling" the alternative reading, discussed in Wilson, that "notice of the right to sue under ERISA is in addition to, and divorced from, notice of

- 14 -

review procedures and the time frame pertaining to such procedures." Id. Indeed, interpreting the regulation that way -- as imposing two unrelated requirements -- would require us effectively to erase the word "including" from the sentence and to replace it with "and," such that the regulation would read: "The notification shall set forth . . . a description of the plan's review procedures and the time limits applicable to such procedures, [and] a statement of the claimant's right to bring a civil action . . . ." 29 C.F.R. § 2560.503-1(g)(1)(iv). It would then further require us to determine that a plan's time limit for filing, itself, could not otherwise be included as one of the "plan's review procedures," or alternatively, that a civil action could not otherwise be one of the "plan's review procedures," for which time limits must be included. We will not interpret the regulation in a way that so contravenes the text, and not even the Eleventh Circuit in Wilson, to which MetLife cites, has done so.

On the other hand, both the Third and Sixth Circuits have interpreted section 2560.503-1(g)(1)(iv) as we do today, and have held that the regulation requires a plan administrator to provide in its final denial letter not only notice of the right to bring a civil action, but also of the time limit for filing the action. In Mirza v. Insurance Administrator of America, Inc., 800 F.3d 129 (3d Cir. 2015), the Third Circuit reasoned that the word "including" was the "most important word in the sentence" for

- 15 -

purposes of interpreting the regulation, and that it signified that "civil actions are logically one of the review procedures envisioned by the Department of Labor." Id. at 134. The court therefore concluded that "29 C.F.R. § 2560.503-1(g)(1)(iv) requires that adverse benefit determinations set forth any plan-imposed time limit for seeking judicial review." Id. at 136. Likewise, in Moyer v. Metropolitan Life Insurance Co., 762 F.3d 503 (6th Cir. 2014), the Sixth Circuit concluded, based on the phrase, "including a statement of the claimant's right to bring a civil action," 29 C.F.R. § 2560.503-1(g)(1)(iv) (emphasis added), that "[t]he claimant's right to bring a civil action is expressly included as a part of those procedures for which applicable time limits must be provided," and thus held that denial letters must include the time limit for judicial review. Id. at 505.[8]

---

[8] We note that it could feasibly be argued that section 2560.503-1(g)(1)(iv)'s notice requirement applies only to initial denial of benefits letters. The regulations contain a later subsection that governs the "[m]anner and content of notification of benefit determination on review," 28 C.F.R. § 2560.503-1(j) (emphasis added), which appears to apply specifically to final denial letters. That subsection mandates that a "plan's benefit determination on review" must include, among other things, "a statement of the claimant's right to bring an action under section 502(a) of the Act," id. § 2560.503-1(j)(4), but makes no express reference to the requirement to include the time limit for filing the action. Thus, one could make the argument that plan administrators are required to include notice of the time limit for filing suit in the initial denial of benefits letter, only. Here, the parties make no mention of section 2560.503-1(j)(4) in their briefs, and treat section 2560.503-1(g)(1)(iv) as applying to final denial letters, as we did in Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 677-78 (1st Cir. 2011), and as

- 16 -

Our reading of the regulation is furthermore in keeping with 29 U.S.C. § 1133's purpose of ensuring a fair opportunity for judicial review, and with ERISA's overall purpose as a remedial statute. Claimants are obviously more likely to read information stated in the final denial letter, as opposed to included (or possibly buried) somewhere in the plan documents, particularly since, as was the case here, plan documents could have been given to a claimant years before his claim for benefits is denied. The Department of Labor, recognizing this, has required that the denial letters themselves include certain information that the Department has deemed critical to ensuring a fair opportunity for review.[9] We think it clear that the Department has included the plan-imposed time limit for filing suit among this required information.[10]

---

other circuits have, see Mirza v. Ins. Admin. of Am., Inc., 800 F.3d 129, 135-36 (3d Cir. 2015); Moyer, 762 F.3d at 504. Thus, for purposes of this case, we assume section 2560.503-1(g)(1)(iv) applies to final denial letters. (It makes no difference in this case because neither MetLife's November 24, 2010 initial denial of benefits letter nor its August 19, 2011 final denial letter was in compliance with section 2560.503-1(g)(1)(iv).)

[9] In addition to a description of the plan's review procedures and applicable time limits, which is the provision at issue here, the regulations also require that the final denial letters include the specific reasons for the adverse determination, the plan provisions on which the adverse determination is based, and any additional information necessary to perfect the claim. 29 C.F.R. § 2560.503-1(g)(1)(i)-(iii).

[10] Section 2560.503-1(g)(1)(iv)'s notice requirement is made all the more important where an employee benefit plan contains a contractual limitations period that, though legally enforceable, seems designed to confuse. Such is the case here. The limitations period began to run on the proof of disability deadline -- the

- 17 -

Thus, we hold that MetLife had a regulatory obligation to provide notice of the time limit for filing suit in its denial of benefits letter, and it failed to do so. Our holding is limited to the circumstances of the case before us, in that it applies only to plan-imposed time limits for filing suit. We reserve for another day the question of the extent of a plan administrator's obligation, under section 2560.503-1(g)(1)(iv), to provide, where the plan itself does not contain a contractual limitations period, notice of the forum state's applicable statute of limitations.

Having determined that MetLife violated section 2560.503-1(g)(1)(iv), we turn our attention to whether Santana-Díaz was prejudiced by the violation.

## B.    Prejudice

Our case law does not always require strict technical compliance with the regulations -- all that is required of the plan administrator is "substantial compliance" with the spirit of

---

complicated calculation for which we have already described -- while Santana-Díaz was still receiving benefits, and before he was informed he would be eligible for those benefits for only a twenty-four-month period. The period then continued to run while Santana-Díaz administratively appealed the decision to deny an extension of his benefits, and it expired just six months after MetLife's final decision. If employers are to enjoy such "large leeway" in designing their employee benefit plans, Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003), the other side of the coin is that plan administrators have a duty, under section 1133's regulations, to be forthcoming about the contractual time limits that apply to the plan's procedures, so that claimants have a fair opportunity to pursue administrative and judicial review.

the regulations.  Niebauer v. Crane & Co., Inc., 783 F.3d 914, 927 (1st Cir. 2015).  Thus, in cases involving a plan administrator's regulatory violation, we have tended to require the plaintiff to demonstrate that the violation prejudiced him by affecting review of his claim.  In other words, a plaintiff must make some "showing that a precisely correct form of notice would have made a difference."  Recupero v. New England Tel. & Tel. Co., 118 F.3d 820, 840 (1st Cir. 1997).

Here, we must first decide whether to remand to the district court for a prejudice finding in the first instance, or make such a determination ourselves.  Generally, where a district court has made a prejudice determination, our case law has treated it as a "factual conclusion that we review only for clear error." DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 13, 15-16 (1st Cir. 2005).  But where the lower court has made no factual finding as to prejudice, and where one could be made on the basis of the administrative record before us, we have, without remanding, made our own prejudice determination.  See Bard v. Boston Shipping Ass'n, 471 F.3d 229, 241 & n.15 (1st Cir. 2006). In this case, because we conclude that a defective denial letter that fails to include the limitations period for filing suit is per se prejudicial, we see no need to remand to the district court for a factual finding as to prejudice.

As we have already noted, the Department of Labor requires plan administrators to give notice of the limitations period in the denial of benefits letter -- even when the information is also contained elsewhere in the plan documents, and regardless of when the claimant last received a copy of the plan documents -- because it recognizes that it is the denial of benefits letter that most clearly and readily provides the plaintiff with the information he needs to know to pursue review of his claim. This leaves us with but one conclusion to draw, which is that the regulation itself contemplates that failure to include this information in the denial of benefits letter is per se prejudicial to the plaintiff. Obviously, a plan administrator's compliance with its regulatory obligation to give this notice in its denial of benefits letters "ma[kes] a difference," Recupero, 118 F.3d at 840, because it notifies a claimant of the pending deadline for filing his case.[11] And ERISA's purpose of ensuring

_____

[11] Furthermore, we see no value in requiring lower courts to make an individualized factual finding of actual prejudice in cases involving this particular regulatory violation. Unlike in other notice defect cases where it might be possible for a plaintiff to prove actual prejudice, there is no way for a plaintiff to prove prejudice from a plan administrator's failure to include the limitations period in the final denial letter, other than by merely attesting that he would have timely filed had he only received proper notice. By contrast, in Terry v. Bayer Corp., 145 F.3d 28, 38-39 (1st Cir. 1998), we assumed, without deciding, that the plan administrator had failed to comply with ERISA when it directed the claimant to forward "any information which may affect the decision to terminate [his] claim," instead of informing him of the specific documentation or medical reports needed to obtain a favorable

that claimants have a fair chance to present their cases remains "the lodestar in determining whether there has been substantial compliance with the notice provisions." Niebauer, 783 F.3d at 927. Thus, we hold that, where a plan administrator fails, as MetLife did here, to include the time limit for filing suit in its denial of benefits letter, and it has not otherwise cured the defect by, for example, informing the claimant of the limitations period in a subsequent letter that still leaves the claimant sufficient time to file suit, the plan administrator can never be in substantial compliance with the ERISA regulations, and the violation is per se prejudicial to the claimant. See Moyer, 762 F.3d at 507 ("The exclusion of the judicial review time limits from the adverse benefit determination letter was inconsistent with ensuring a fair opportunity for review and rendered the letter not in substantial compliance."); Mirza, 800 F.3d at 136 ("Without

---

decision. There, the plaintiff could presumably have shown prejudice by showing that he actually possessed additional, un-submitted medical documents, and that the outcome in his case might have been different had the letter only informed him that they were needed. Similarly, in Recupero v. New England Telephone & Telegraph Co., 118 F.3d 820, 825, 840-41 (1st Cir. 1997), where the claimant argued that the plan administrator failed to include the specific reasons for denying her claim or cite the specific plan provisions upon which the denial was based, the claimant could have presented evidence in the form of additional documents that she might have submitted if the letter had only made clear their potential relevance to the denial of her claim. Here, the violation is obviously and necessarily prejudicial to the plaintiff, and there is no such corollary evidence of prejudice that we might expect a plaintiff to proffer.

- 21 -

[the] time limit, a notification is not in substantial compliance with ERISA.").[12]  MetLife's defective notice therefore prejudiced Santana-Díaz.

**C.    Remedy**

This leaves us with the question of the appropriate consequence for MetLife's regulatory violation.    The parties dispute whether equitable tolling of the limitations period should be the remedy for a section 2560.503-1(g)(1)(iv) violation.    Our review today, however, does not reach the equitable tolling question because we conclude that MetLife's failure to include the time limit in the final denial letter rendered, as a matter of law, the contractual three-year limitations period altogether inapplicable.

Harkening back to our earlier discussion of Mirza and Moyer, we note that our sister courts in the Third and Sixth Circuits have resolved cases involving the same regulatory violation MetLife has committed here by concluding that the violation rendered the limitations period inapplicable.    We think

_____

[12] Instead of requiring, as we do, that the plaintiff establish prejudice, courts in the Third and Sixth Circuits appear to apply a substantial compliance test in which the courts determine whether the communications between the administrator and participant, as a whole, fulfill section 1133's requirements.  See, e.g., Wenner v. Sun Life Assurance Co. of Canada, 482 F.3d 878, 882 (6th Cir. 2007); Morningred v. Delta Family-Care & Survivorship Plan, 790 F. Supp. 2d 177, 194-95, aff'd, 526 F. App'x 217 (3d Cir. 2013).

their approach is the correct one.[13]  For example, in Mirza, the Third Circuit focused its analysis on the plan administrator's regulatory violation of failing to include the plan's time limit in its final denial letter, and explained, "we do not find equitable tolling to be an obstacle, or even relevant, to [the plaintiff's] claim."  800 F.3d at 133.  It concluded that "[b]ecause the denial letter [the plaintiff] received on August 12, 2010 did not comply with the regulatory requirements, the one-year deadline for judicial review was not triggered," id. at 137-38 -- in other words, it would not apply.  To do otherwise, the court reasoned, "would render hollow the important disclosure function of § 2560.503-1(g)(1)(iv)," as plan administrators would then "have no reason at all to comply with their obligation to include contractual time limits for judicial review in benefit denial letters."  Id. at 137.

Similarly, in Moyer, after concluding that "[the plaintiff] was denied his right to judicial review as a result of MetLife's failure to comply with § 1133," the Sixth Circuit reversed the district court's dismissal on timeliness grounds and

---

[13] As we have already discussed, the Eleventh Circuit also encountered a similar scenario in Wilson v. Standard Insurance Co., 613 F. App'x 841, 843 (11th Cir. 2015) (per curiam), but decided the case on equitable tolling grounds.  Because our reading of section 2560.503-1(g)(1)(iv) differs from the Eleventh Circuit's, and because we do not reach the equitable tolling issue here, we do not find much persuasive weight in this unpublished case.

remanded, reasoning that "[t]he appropriate remedy is to remand to the district court so that [the plaintiff] may now receive judicial review." 762 F.3d at 507.

The courts' reasoning in Mirza and Moyer makes sense, given that plan administrators are in the best position to know what plan-imposed time limits apply to the very plans they are charged with administering, and that the requirement to include such information in their denial letters imposes upon them the most minimal of burdens. To accept that plan administrators may nevertheless dodge this simple regulatory obligation so long as claimants have received the plan documents at some point during their tenure as employees, would, as Santana-Díaz argues, effectively make section 2560.503-1(g)(1)(iv) "dead letter."

Furthermore, this approach, as the Third Circuit also discussed in Mirza, is in keeping with analogous ERISA cases in the administrative review context where courts have declined to enforce contractual limitations periods on account of a non-compliant termination of benefits letter. In those cases, the courts reasoned that a plan administrator's failure to comply with the ERISA regulations by not providing notice of the time limit for filing an administrative appeal rendered the limitations period for administrative review un-triggered. See, e.g., Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 107 (2d Cir. 2003) ("A written notice of denial must be comprehensible and provide the

claimant with the information necessary to perfect her claim, including the time limits applicable to administrative review. A notice that fails to substantially comply with these requirements does not trigger a time bar contained within the plan." (citation omitted)), overruled on other grounds by CIGNA Corp. v. Amara, 563 U.S. 421 (2010); Syed v. Hercules, Inc., 214 F.3d 155, 162 (3d Cir. 2000) (same); White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan, 896 F.2d 344, 350 (9th Cir. 1989) (same). This has been the case even where the plaintiff possessed a copy of the plan documents, and therefore was on notice of the time limit for filing an administrative appeal. See Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335, 342 (3d Cir. 1996) ("The fact that [the plaintiff's] attorney had a copy of the Plan, and thus the means to ascertain the proper steps for requesting review, in no way excuses [the defendant's] failure to comply with the Department of Labor's regulations.").

Accordingly, we hold that, as a consequence of MetLife's failure to include the time limit for filing suit in its final denial letter, the limitations period in this case was rendered inapplicable.

D.    Statute of Limitations

Recall that in the absence of a contractual limitations period within the employee benefit plan itself, the forum state's most closely analogous statute of limitations applies to ERISA

- 25 -

claims. Santaliz-Ríos, 693 F.3d at 59. Here, the Plan's limitations period was rendered inapplicable, so we look to Puerto Rico law for the closest statute of limitations. See Mirza, 800 F.3d at 137-38 (borrowing state statute of limitations for contract claims where the plan administrator's regulatory violation rendered the plan's limitations period not triggered). Because an ERISA claim brought under 29 U.S.C. § 1132(a) to recover benefits arises out of a contract between an employer and its employees, courts in Puerto Rico have applied Puerto Rico's default fifteen-year statute of limitations for contract claims, P.R. Laws Ann. tit. 31 § 5294. Santaliz-Ríos, 693 F.3d at 59-60 (citing Nazario Martinez v. Johnson & Johnson Baby Prods., Inc., 184 F. Supp. 2d 157, 159-62 (D.P.R. 2002)); see also Riley v. Metro. Life Ins. Co., 744 F.3d 241, 244 (1st Cir. 2014) (applying Massachusetts statute of limitations for breach of contract to a section 1132(a) claim), cert. denied, 135 S. Ct. 94; Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988) (stating that an ERISA claim to enforce benefits is a "simple contract claim"), cert. denied, 488 U.S. 909.[14] The fifteen-year statute of limitations

_____

[14] The circuits that have decided this issue appear to uniformly apply the state statute of limitations for contract actions. See, e.g., Santino v. Provident Life & Accident Ins. Co., 276 F.3d 772, 776 (6th Cir. 2001); Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program, 222 F.3d 643, 648 (9th Cir. 2000) (en banc); Harrison v. Digital Health Plan, 183 F.3d 1235, 1241 (11th Cir. 1999) (per curiam); Hogan v. Kraft Foods, 969 F.2d 142, 145 (5th Cir. 1992); Wright v. Southwestern

began to run on August 19, 2011 (the date of the final denial letter).  See Riley, 744 F.3d at 244-45 (explaining that "[w]hile state law governs the length of the limitations period, federal common law determines when an ERISA claim accrues," which is "ordinarily . . . when a fiduciary denies a participant benefits" (citations omitted)).

Santana-Díaz filed suit on August 18, 2013, which is well within the fifteen years.  Thus, this case was timely filed.

**CONCLUSION**

For the reasons we explain above, we reverse and remand for further proceedings consistent with this opinion.  Costs to appellant.

---

Bell Tel. Co., 925 F.2d 1288, 1291 (10th Cir. 1991); Johnson v. State Mut. Life Assurance Co. of Am., 942 F.2d 1260, 1263 (8th Cir. 1991) (en banc).